IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| APRIL D. MOLCHAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 19-082 (MN) |
| | ) |
| DELMAR FIRE DEPARTMENT, INC., | ) |
| DELMAR, DELAWARE and ANDREW | ) |
| REMENTER, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Gary W. Alderson, ELZUFON AUSTIN & MONDELL, P.A., Wilmington, DE – attorney for Plaintiff

Michele D. Allen, ALLEN & ASSOCIATES, Hockessin, DE; Robin R. Cockey, Ashley A. Bosché, COCKEY, BRENNAN & MALONEY, P.C., Salisbury, MD – attorneys for Defendants

January 17, 2020
Wilmington, Delaware

*signature: Maryellen Noreika*

**NOREIKA, U.S. DISTRICT JUDGE:**

Presently before the Court is the motion of Defendants Delmar Fire Department, Inc., Delmar, Delaware ("Delmar FD") and Andrew Rementer ("Rementer") (collectively, "Defendants") to dismiss the First Amended Complaint for failure to state a claim on the grounds that Plaintiff April D. Molchan ("Plaintiff" or "Molchan") does not plausibly allege unlawful discrimination on the basis of sex, intentional or negligent infliction of emotional distress or battery. (*See* D.I. 9). For the reasons set forth below, Defendants' motion is GRANTED.

**I.     BACKGROUND**

Plaintiff has been a volunteer member with Delmar FD since sometime in 2009, and she was also a paid employee of Delmar FD from 2009 to December 27, 2018. (*See* D.I. 6 ¶¶ 11-12 & 37). On September 8, 2015, Defendant Rementer – who was then Fire Chief – and Plaintiff were returning with two other Delmar FD officers from a meeting in Dover when they stopped for lunch in Greenwood. (*Id.* ¶ 13). At that lunch, Rementer purportedly placed his hand on the inside of Plaintiff's thigh and Plaintiff "immediately and forcefully" told him to move his hand. (*Id.*). Rementer complied. (*Id.*). Nearly two years later, on July 30, 2017 and while Plaintiff was working as a paid Delmar FD employee, Rementer – who was then President and Second Assistant Chief of the Delmar FD – placed his hand on Plaintiff's buttocks while walking behind her. (*Id.* ¶ 14). Plaintiff reacted and Rementer replied, "I'm sorry, I can't do that. You're paid today not volunteer." (*Id.*). This incident was captured on surveillance video. (*Id.* ¶¶ 21 & 28). On August 21, 2017, Plaintiff sent a complaint letter regarding Rementer to the Delmar FD Employment Committee Chair and the Fire Chief. (*Id.* ¶¶ 17-18). That same day, prior to a Delmar FD membership meeting, Rementer was allegedly asked to resign as President (though he did not),

1

and it was announced at the meeting that Rementer was suspended for thirty days or until an investigation into a complaint of "improper conduct" against him concluded. (*Id.* ¶¶ 19-20).

Shortly after the Delmar FD membership meeting, on August 25, 2017, Plaintiff submitted a complaint to the Delaware Department of Labor ("the Delaware DOL"). (D.I. 6 ¶ 22). Then, on August 28, 2017, Plaintiff attended a meeting with the Delmar FD House Committee ("the House Committee") where she was asked about her relationship with Rementer, why she filed a formal complaint and whether there had been other occasions where Rementer made her uncomfortable. (*Id.* ¶¶ 23-24). Plaintiff alleges that this questioning was "hostile and accusatory." (*Id.* ¶ 24).

At the next Delmar FD membership meeting on September 6, 2017, Rementer was permitted to attend despite apparently being on suspension, and the meeting included discussion of Plaintiff's complaint against Rementer and the investigation into the complaint. (D.I. 6 ¶¶ 25-27). Based on the surveillance footage available, the investigation concluded that "Rementer had indeed touched Molchan's buttocks as alleged," and the House Committee recommended that Rementer be expelled from the Delmar FD. (*Id.* ¶ 28). Rementer then admitted at the same meeting that he "did it" but then allegedly "went on a tirade against" Plaintiff, claiming that her complaint was retaliation for a prior disagreement. (*Id.* ¶ 29). Plaintiff denied this. (*Id.* ¶ 30). At another meeting on September 18, 2017, Rementer was questioned about previous complaints of inappropriate touching by other females Delmar FD members, at least one of which was confirmed by the Fire Chief. (*Id.* ¶ 32). The House Committee's recommendation to expel Rementer from the Delmar FD received a simple majority of votes, but Rementer was not expelled as expulsion required a "third offense" and a two-thirds majority vote. (*Id.* ¶ 33). Rementer resigned as President and Second Assistant Chief but, about a month later, he was appointed as Engineer (a leadership position with Delmar FD). (*See id.* ¶¶ 33 & 35).

On October 10, 2017, the Delaware DOL sent Delmar FD notice of a Charge of Discrimination on behalf of Plaintiff and Plaintiff received preliminary findings on or about December 21, 2017. (D.I. 6 ¶ 34). Then, on December 27, 2017, Plaintiff was removed from the Delmar FD work schedule, and all of her previously scheduled shifts were cancelled and she was apparently removed from the payroll. (*Id.* ¶ 37). On or about January 19, 2018, Plaintiff submitted a second complaint to the Delaware DOL, alleging that she was terminated in retaliation for the first complaint. (*Id.* ¶ 39; *see also id.* ¶ 41). Although Delmar FD was required to file a "position statement" in response to Plaintiff's first Charge of Discrimination by January 5, 2018, Delmar FD did not respond until February 12, 2018. (*Id.* ¶¶ 36 & 38). In its response, Delmar FD admitted that Rementer touched Plaintiff's buttocks and that his actions were inappropriate and warranted expulsion (even though he was not expelled). (*Id.* ¶ 40). On May 12, 2018, the Delaware DOL sent Delmar FD notice of the second Charge of Discrimination and Delmar FD filed its response on June 1, 2018, denying that removing Plaintiff from the payroll was retaliatory. (*Id.* ¶ 42). Plaintiff received notices of her right to sue from the Delaware DOL on October 17, 2018 and from the U.S. Equal Employment Opportunity Commission on November 28, 2018. (*Id.* ¶ 43; *see also id.*, Exs. I & J). Plaintiff alleges that she exhausted her administrative remedies. (D.I. 6 ¶ 10).

On January 15, 2019, Plaintiff filed the present action, alleging that Defendants Delmar FD and Rementer – as well the town of Delmar – wrongfully discriminated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Delaware Discrimination in Employment Act ("DDEA"), 19 *Del. C.* § 710 *et seq.* (*See* D.I. 1 ¶¶ 45-51). Plaintiff also asserted claims for intentional infliction of emotional distress, negligent infliction of emotional distress and battery. (*Id.* ¶¶ 52-55). On February 19, 2019, Plaintiff filed a First

Amended Complaint that removed the town of Delmar as a defendant but otherwise left the allegations and claims against Defendants Delmar FD and Rementer unchanged. (*See* D.I. 6).

On March 4, 2019, Defendants filed the present motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that the First Amended Complaint fails to plausibly allege discrimination in violation of Title VII or the DDEA based on either hostile work environment or retaliation. (*See* D.I. 9 & 10; *see also* D.I. 10 at 6-11). Defendants also seek dismissal of the emotional distress claims as insufficiently pleaded and barred by the Delaware Worker's Compensation Act, as well as dismissal of the battery claims as insufficiently pleaded. Defendants' motion has been fully briefed. (*See* D.I. 13 & 14).

## II. **LEGAL STANDARDS**

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008). The Court is not, however, required to accept as true bald assertions, unsupported conclusions or unwarranted inferences. *See Mason v. Delaware (J.P. Court)*, No. 15-1191-LPS, 2018 WL 4404067, at *3 (D. Del. Sept. 17, 2018). Dismissal under Rule 12(b)(6) is only appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). This plausibility standard obligates a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Instead, the pleadings must provide sufficient

factual allegations to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 506 U.S. at 678.

## III. DISCUSSION

### A. Plaintiff's Discrimination Claims under Title VII and the DDEA

In the First Amended Complaint, Plaintiff alleges that Defendants unlawfully discriminated against her in violation of Title VII, as well as in violation of the DDEA, the Delaware counterpart to Title VII. (*See* D.I. 6 ¶¶ 44-50 (Count I)). As a threshold matter, the Court agrees with Defendants that Rementer must be dismissed from these claims because he is not an "employer" subject to liability within the meaning of Title VII or the DDEA. (*See* D.I. 10 at 7). Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person . . . ." 42 U.S.C. § 2000e(b). Individual employees cannot be held liable under Title VII. *See Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996) (en banc) (concluding that "Congress did not intend to hold individual employees liable under Title VII" and affirming dismissal of Plaintiff's supervisor from Title VII claims because he did not fall within the statutory definition of "employer"); *see also N'Jai v. Floyd*, 386 F. App'x 141, 144 (3d Cir. 2010). Similarly, the DDEA defines "employer" as "any person employing 4 or more employees within the State . . . ." 19 *Del. C.* § 710(7). Plaintiff has not plausibly alleged that Rementer is an "employer" as defined by Title VII or the DDEA and, therefore, he must be dismissed from these claims.[1]

Turning to the specific allegations of discrimination in the First Amended Complaint, Plaintiff appears to assert two different theories arising under Title VII and the DDEA. First,

---

[1] The Court has doubts that this is a deficiency in pleading, as it appears from the First Amended Complaint (and briefing on the motion to dismiss) that Rementer was only a supervisor. *See Le v. Univ. of Pennsylvania*, 321 F.3d 403, 409 (3d Cir. 2003) ("Under [a supervisor-employee] relationship, liability cannot exist pursuant to Title VII.").

5

Plaintiff alleges that she was subjected to a hostile work environment as a result of Rementer's sexual harassment. (D.I. 6 ¶ 46). Second, Plaintiff alleges that Delmar FD terminated her as a paid employee because she filed a complaint with the Delaware DOL regarding Rementer's conduct. (*Id.* ¶ 49). Because the parties brief the Title VII and DDEA issues together,[2] and because DDEA mirrors Title VII and offers the same protections from discrimination, the Court will address these federal and state law claims together under the Title VII framework. *See, e.g.*, *Hyland v. Smyrna Sch. Dist.*, 608 F. App'x 79, 82 (3d Cir. 2015) ("[T]he evidence needed to prevail under the DDEA is generally the same as that needed to prevail under Title VII. Accordingly, because Hyland's Title VII claims fail, her DDEA claims fail, too.").

### 1. Hostile Work Environment

Plaintiff alleges that the "intentional, severe and pervasive discriminatory acts and omissions of Defendants" subjected Plaintiff to a hostile work environment. (D.I. 6 ¶ 46). According to the First Amended Complaint, "[t]he single incident of physical contact with Rementer" and its effects were severe, physically threatening and humiliating. (*Id.* ¶ 47). Further, Plaintiff alleges that this instance of inappropriate contact and its effects "unreasonably terminated" her employment and interfered with her volunteer duties at Delmar FD. (*Id.*). Plaintiff thus appears to be asserting a claim of hostile work environment based on sexual harassment.

Sexual harassment is a form of discrimination actionable under Title VII, and such harassment may give rise to a claim of hostile work environment. *See Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir. 1999). "Title VII prohibits sexual harassment that is 'sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment.'" *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013)

---

[2] Plaintiff raises no argument that the DDEA claims should be addressed under some other framework or that these claims should survive if the Title VII claims are dismissed.

(quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). A claim of hostile work environment based on sexual harassment requires Plaintiff to establish (1) that she suffered intentional discrimination because of her sex, (2) that the discrimination was severe or pervasive, (3) that the discrimination detrimentally affected her, (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position and (5) that *respondeat superior* liability exists. *See Mandel*, 706 F.3d at 167. Therefore, to withstand a motion to dismiss, Plaintiff must plausibly allege facts to support a reasonable inference that each of these elements is present here.

Defendants argue that Plaintiff has failed to adequately plead the second element of a hostile work environment claim – *i.e.*, that the sexual harassment was severe or pervasive. (*See* D.I. 10 at 8).[3] According to Defendants, when there are only isolated incidents, those incidents must be "extremely serious" to give rise to a claim of hostile work environment. (*Id.* (citing *Mandel*, 706 F.3d at 165-67)). As to Rementer inappropriately touching Plaintiff's buttocks in July 2017, Defendants argue that there is no description of that incident as "forceful" or otherwise "physically threatening." (D.I. 10 at 8). And even if the incident from 2015 is considered,[4] Defendants argue that Plaintiff has still only alleged isolated incidents that fall short

---

[3] Although Defendants do not seriously challenge the sufficiency of the allegations for the other four elements, they summarily assert that one of the exhibits attached to the First Amended Complaint demonstrates that Plaintiff cannot meet the third and fourth elements of a hostile work environment claim. (*See* D.I. 10 at 9). That exhibit – Delmar FD's response to the First Charge of Discrimination – includes an admission that Rementer touched Plaintiff inappropriately and then includes a description of the incident as captured on video. (*See* D.I. 6, Ex. E ¶ 1). It is unclear to the Court how this narrative provided by Delmar FD could provide insight on how the incident would affect a reasonable person of the same sex. Similarly, that the video footage may show little outward reaction by Plaintiff does not prove that Plaintiff was unaffected.

[4] Defendants argue that any claim based on the incident from 2015 is barred because Plaintiff did not file a charge of discrimination within the requisite time period. (*See* D.I. 10 at 9). The Court generally agrees. *See Kokinchak v. Postmaster Gen. of the United States*, 677 F. App'x 764, 768 n.3 (3d Cir. 2017) ("Title VII does not permit courts to consider

of the severity (or pervasiveness) required to support a claim for hostile work environment. (*Id.* at 9). Thus, in Defendants' view, the hostile work environment claims must be dismissed.

The Court agrees with Defendants. In reviewing a hostile work environment claim, the Court must look to the totality of the circumstances to determine whether the accused actions constitute severe or pervasive conduct actionable under Title VII. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) ("[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."); *see also Kokinchak v. Postmaster Gen. of the United States*, 677 F. App'x 764, 767 (3d Cir. 2017). Accepting Plaintiff's well pleaded factual allegations as true, the Court cannot reasonably infer that Plaintiff was subjected to either pervasive or severe sexual harassment. Plaintiff plausibly alleges inappropriate physical contact by Rementer on one occasion (or two if the 2015 incident is considered). Yet the Court is unable to conclude that these isolated incidents were of the severity necessary to support Title VII liability. "Unless extremely serious, offhand comments and isolated incidents are insufficient to sustain a hostile work environment claim." *Chinery v. Am. Airlines*, 778 F. App'x 142, 145 (3d Cir. 2019); *see also Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017) (a single complained-of incident must be so extreme as to amount to a change in plaintiff's employment terms and conditions)). The First Amended Complaint does not contain plausible factual allegations that the July 2017 incident (or the 2015 incident) was so severe that it constituted a change in the terms and conditions of her employment with Delmar FD.

---

claims for sexual harassment hostile work environment which have not been raised before the EEOC and exhausted at the administrative level.").

Plaintiff attempts to bolster her allegations with argument that Delmar FD's actions also constituted harassment contributing to a hostile work environment. (D.I. 13 at 11-12).[5] Although Plaintiff argues that "[i]t was not simply Rementer's touching that constituted the abuse here, it was also how [Delmar FD] reacted to Plaintiff's complaint" (D.I. 13 at 11-12), the First Amended Complaint belies this assertion. There are no factual allegations that plausibly suggest that Delmar FD's handling of Plaintiff's complaint was actionable discrimination (alone or in combination with Rementer's inappropriate conduct). According to Plaintiff's own allegations, Delmar FD launched an investigation and suspended Rementer shortly after receiving Plaintiff's complaint about the July 2017 incident. (*See, e.g.*, D.I. 6 ¶¶ 19-20). That investigation proceeded to completion and recommended that Rementer be expelled from the Delmar FD (although there were insufficient votes to expel him). (*See id.* ¶¶ 27-28 & 32-33). These allegations do not allow the Court to draw the inference that Delmar FD's actions (alone or in combination with Rementer's actions) constituted pervasive or severe harassment sufficient to support a hostile work environment claim.

Rementer's unwanted touching was unbecoming of any individual in modern society and is unacceptable in the workplace (or anywhere else), but Title VII requires more. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("Title VII, we have said, does not set forth a general civility code for the American workplace." (quotation marks and citation omitted)). To state a claim under Title VII, Plaintiff must plausibly allege that she was subjected to severe or pervasive sexual harassment that created a hostile work environment. Having failed to do so, the hostile work environment claims must be dismissed.

---

[5] Plaintiff's opposition focused on "societal mores" and "cultural acceptance" instead of defending Plaintiff's pleading under the relevant law. This is unhelpful. The Court must assess the sufficiency of Plaintiff's allegations under controlling precedent.

9

### 2. Retaliation

Plaintiff also alleges that she was terminated from Delmar FD in retaliation for filing her first Charge of Discrimination regarding Rementer's inappropriate touching with the Delaware DOL. (D.I. 6 ¶ 49). According to the First Amended Complaint, Plaintiff first complained of Rementer's conduct to the Delaware DOL on August 25, 2017, and Delmar FD terminated her as a paid employee on December 27, 2017 by removing her from the payroll. (*Id.* ¶¶ 22 & 37; *see also id.* ¶ 49). Plaintiff alleges that submitting this first complaint was a protected activity and that Delmar FD unlawfully terminated her in response to that complaint. (*Id.* ¶¶ 49-50).

An employer is prohibited from discriminating against an employee who "opposed any practice made an unlawful employment practice" by Title VII or against an employee who "made a charge, testified, assisted, or participated" in an investigation under Title VII. 42 U.S.C. § 2000e-3(a). Title VII thus prohibits an employer from "retaliating against an employee for complaining about, or reporting, discrimination or retaliation." *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 256 (3d Cir. 2017). A *prima facie* case of retaliation requires Plaintiff to show (1) that she engaged in conduct protected by Title VII, (2) that her employer took adverse action against her and (3) that there is a causal link between her protected conduct and the employer's adverse action against her. *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015). To state a claim of retaliation sufficient to withstand a motion to dismiss, Plaintiff must "plead[] sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence" of these three elements. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

Defendants argue that Plaintiff has not adequately pleaded the third element here – *i.e.*, that there was a causal connection between Plaintiff's protected conduct and her termination as a paid

employee of Delmar FD. (*See* D.I. 10 at 10-11).[6]  According to Defendants, Plaintiff was terminated because Delmar FD had just passed a bylaw amendment that prohibited volunteers from also working as paid employees. (*Id.* at 10). That amendment purportedly resulted in two other Delmar FD members also being removed from the payroll and, further, apparently applies to all future members who attempt to volunteer and work for Delmar FD. (*Id.*). In support of their argument, Defendants point to an exhibit cited in and attached to the First Amended Complaint – Delmar FD's response to the second Charge of Discrimination. (*Id.* at 10; *see also* D.I. 6, Ex. H (explaining that bylaw amendment in question was one of a number voted on at December 18, 2017 meeting and, after it passed, it applied to all Delmar FD members working as both volunteers and paid employees)). In Defendants' view, the passage of this amendment – supported by materials incorporated into the pleading – shows that Plaintiff has failed to adequately allege a causal link between her complaint of Rementer's conduct and her termination.

The Court agrees that Plaintiff has not plausibly alleged a causal link between her reporting the July 2017 incident with the Delaware DOL and Delmar FD terminating her as a paid employee. Plaintiff asserts that "there was a causal connection between that protected activity and Defendants' materially adverse acts and omissions against Plaintiff," stating that "Defendants engaged in an intervening pattern of antagonism" after she complained to the Delaware DOL and that only three months separated the conclusion of Delmar FD's internal investigation and her termination. (D.I. 6 ¶ 50). But these assertions are unsupported (and contradicted) by Plaintiff's own allegations and materials cited in the First Amended Complaint. As noted above, upon receiving notice of Plaintiff's informal complaint, Delmar FD suspended Rementer and launched an investigation – one that concluded with a recommendation that he be expelled. (*See, e.g.*, *id.*

---

[6] Defendants again do not challenge the sufficiency of pleading as related to the other elements and, as such, the Court will not address them.

¶¶ 19-20, 27-28 & 32-33). In the Court's view, these allegations do not permit a reasonable inference that Delmar FD antagonized Plaintiff for the time between her initial complaint and her termination. And as to timing, temporal proximity between the protected activity and adverse employment action may sometimes be sufficient to establish this causal link, but the Third Circuit has emphasized that the timing must be "unusually suggestive" to alone support a finding on the causal link. *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 331 (3d Cir. 2015). Plaintiff has failed to plead any facts to suggest here that the timing is "unusually suggestive" of the requisite causal link to support a claim of retaliation. In fact, the First Amended Complaint cites to material that shows Delmar FD passed a bylaw amendment that prohibited volunteers from also working as paid employees of Delmar FD – an amendment that applies to all members and also resulted in others being terminated from the payroll. (D.I. 6 ¶ 42; *see also id.*, Ex. H).[7] Plaintiff has thus failed to plausibly allege the requisite causal link between her protected activity and her termination as a paid employee of Delmar FD and, as a result, the retaliation claims must be dismissed.

### B. Plaintiff's Claims of Emotional Distress and Battery

The First Amended Complaint includes claims of intentional and negligent infliction of emotional distress, as well as a claim of battery. (*See* D.I. 6 ¶¶ 44-54). Each of these claims arises under state law. Plaintiff alleges that this Court has supplemental jurisdiction over those state-law claims pursuant to 28 U.S.C. § 1367 and, additionally, that this Court has diversity subject matter jurisdiction over "this matter." (*See* D.I. 6 ¶¶ 7, 9). As to diversity jurisdiction, the pleading itself demonstrates the contrary. Plaintiff is a resident of Maryland. (*Id.* ¶ 1). Defendant Rementer also resides in Maryland (and did so when the case was filed). (*Id.* ¶ 5; *see also* D.I. 1 ¶ 6). Diversity jurisdiction requires complete diversity of citizenship and that diversity must exist at the time of

---

[7] In opposing Defendants' motion, Plaintiff is silent on this point. (*See* D.I. 13 at 12-13).

filing. *See Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 152 (3d Cir. 2009) ("[F]ederal diversity jurisdiction is generally determined based on the circumstances prevailing at the time the suit was filed."). The complete diversity requirement is not met here and therefore diversity cannot be a basis for this Court's subject matter jurisdiction over any claim. As to supplemental jurisdiction, Plaintiff's claims arising under federal law will be dismissed, and the Court thus declines to exercise supplemental jurisdiction over Plaintiff's state-law claims. *See* 28 U.S.C. § 1367(c)(3).

### C. Leave to Amend

Although Plaintiff has not requested leave to amend her pleading, the Court finds it appropriate to grant leave to amend to cure the deficiencies set forth above. The pleading before the Court is an amended complaint, but the original complaint was not subject to a motion under Rule 12(b)(6). Instead, Plaintiff amended her original complaint as a matter of course under Rule 15(a)(1)(B). (*See* D.I. 1, 6). Because Rule 15(a)(2) requires that leave to amend be freely granted "when justice so requires," and because this is the first time that Plaintiff's allegations have been found deficient, Plaintiff will be given leave to file a further amended complaint.[8]

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (D.I. 9) is GRANTED and the Court will decline to exercise supplemental jurisdiction over the state-law claims. An appropriate order will follow.

---

[8] That being said, the Court expects Plaintiff and her counsel to carefully examine her pleading and remove incorrect and unsupported allegations – *e.g.*, that diversity jurisdiction exists if Plaintiff and Defendant Rementer both resided in Maryland at the time of filing.