IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| APRIL D. MOLCHAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 19-082 (MN) |
| | ) |
| DELMAR FIRE DEPARTMENT, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Gary W. Alderson, Woloshin Lynch & Associates, P.A., Wilmington, DE – attorney for Plaintiff

Michele D. Allen, Emily A. Biffen, Allen & Associates, Wilmington, DE; Robin R. Cockey, Ashley A. Bosché, Cockey, Brennan & Maloney, P.C., Salisbury, MD – attorneys for Defendant

December 3, 2021
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Presently before the Court is the motion of Defendant Delmar Fire Department, Inc. ("Defendant" or "Delmar FD") for summary judgment. (D.I. 58). Plaintiff April Molchan ("Plaintiff" or "Molchan") opposes the motion. (D.I. 62). For the reasons set forth below, Defendant's motion is DENIED-IN-PART and GRANTED-IN-PART.

**I.     BACKGROUND**

Plaintiff was a volunteer member with Delmar FD starting in 2009, and she was a paid employee of Delmar FD from 2009 to December 27, 2018. (*See* D.I. 25 ¶¶ 2 & 15-16). At the core of this matter is the behavior of Andrew Rementer ("Rementer"), a former defendant to this lawsuit. (*See* D.I. 6 & D.I. 25).[1] Plaintiff claims that Rementer had a history of making "suggestive comments and employ[ing] sexual innuendo in conversation" with her and other female Delmar FD members and employees. (D.I. 25 ¶¶ 17 & 19 & 24-26). On September 8, 2015, Rementer – who was then Fire Chief – and Plaintiff, along with two other Delmar FD officers, were returning from a meeting in Dover when they stopped for lunch in Greenwood. (*Id.* ¶ 27). At that lunch, Rementer purportedly placed his hand on the inside of Plaintiff's thigh and Plaintiff "immediately and forcefully told him to remove his hand." (*Id.* ¶ 28.). Rementer complied. (*Id.*). Nearly two years later, on July 30, 2017, while Plaintiff was on duty as a paid Delmar FD employee, Rementer – who was then President and Second Assistant Chief of the Delmar FD – placed his hand on Plaintiff's buttocks while walking behind her. (*Id.* ¶ 29). Plaintiff reacted and Rementer replied, "I'm sorry, I can't do that. You're paid today not volunteer." (*Id.* ¶ 31). Surveillance video captured the incident. (*Id.* ¶ 30).

---

[1]     When Plaintiff filed her Amended Complaint (D.I. 25), she removed Rementer as a named defendant.

1

On August 20, 2017, Plaintiff sent a complaint letter regarding Rementer to the Delmar FD Employment Committee Chair and the Fire Chief. (*Id.* ¶ 42). That same day, prior to a Delmar FD membership meeting, the membership allegedly asked Rementer to resign as President. (*Id.* ¶ 48). At the meeting, the membership announced that an employee had filed a complaint against Rementer. (*Id.* ¶ 51). Subsequently, the membership announced that Rementer was suspended for thirty days or until an investigation into a complaint of "improper conduct" against him concluded. (*Id.* ¶ 53). Further, the membership mandated that he attend sexual harassment training. (D.I. 62-3 (Johnson Dep.) at 51:19-52:1).

Shortly after the Delmar FD membership meeting, on August 25, 2017, Plaintiff submitted a complaint to the Delaware Department of Labor ("the Delaware DOL"). (D.I. 25 ¶ 46). Then, on August 28, 2017, Plaintiff attended a meeting with the Delmar FD House Committee ("the House Committee"). (*Id.* ¶ 58). The House Committee asked her about her relationship with Rementer, why she filed a formal complaint, and whether there had been other occasions when Rementer made her uncomfortable. (*Id.* ¶¶ 58 & 64-65). Plaintiff alleges that this questioning was "hostile, intrusive, discriminatory, defamatory, and accusatory." (*Id.* ¶ 64).

At the next Delmar FD membership meeting on September 6, 2017, the House Committee permitted Rementer to attend despite his suspension. (*Id.* ¶¶ 66-69). Plaintiff asserts that her wish to be separate from Rementer and to keep the situation confidential was violated, as more than fifty members were present, "[n]o effort was made to protect Molchan's privacy or withhold her identity as the complainant," and her name, complaint letter, and account of the harassment were read aloud. (*Id.* ¶¶ 66-67 & 72-74). The meeting included a discussion of Plaintiff's complaint against Rementer and the corresponding investigation. (*Id.* ¶¶ 71-76).

Based on the surveillance footage available, the House Committee concluded that "Rementer had indeed touched Molchan's buttocks as Molchan had alleged." (*Id.* ¶ 76). The House Committee recommended that Rementer be expelled. (*Id.* ¶ 77). Rementer admitted that he "did it," but then "went on a tirade against" Plaintiff, claiming that her complaint was retaliation for a prior disagreement. (*Id.* ¶¶ 79-80). Plaintiff denied this claim. (*Id.* ¶ 82). On September 18, 2017, the House Committee questioned Rementer about previous complaints of inappropriate touching by other female Delmar FD members; at least one instance was confirmed by the Fire Chief. (*Id.* ¶¶ 86-87 & 91-96). The House Committee's recommendation to expel Rementer from the Delmar FD received a simple majority of votes. (*Id.* ¶ 101). The House Committee did not expel Rementer because the bylaws required a "third offense" and a two-thirds majority vote. (*Id.*). Rementer resigned as President and Second Assistant Chief but, about a month later, was appointed as Engineer, a leadership position within the organization. (*See id.* ¶¶ 102 & 104-05).

In December of 2017, the House Committee amended several of its bylaws, one of which mandated that individuals choose between volunteer or employee status. (D.I. 58 ¶¶ 21 & 23). The bylaws allowed for amendments at only two points in the year: June and December. (*See* D.I. 58 ¶ 22; D.I. 58-2 at Ex. 5 Art. X, § 2; D.I. 62-3 (Johnson Dep.) at 18:3-5; D.I. 62-5 (Abbott Dep.) at 28:2-5). The relevant amendment stated: "Any member, Life, Active, Honorary, or Fire/EMS Associate may not work and collect money from the Delmar Fire Department. Members who want to apply for employment must first resign before submitting the application." (D.I. 58 ¶ 23; D.I. 58-2 at Ex. 6 ¶ 7). The amendment's purpose was "the avoidance of wage and hour issues by preventing a situation in which a volunteer member claims he or she was actually working and is due wages or precluding a volunteer member from getting a cash award from the

state for volunteering, while also being paid by the volunteer fire company to work." (D.I. 58-2 at Ex. 6 ¶ 8).  This change was an ongoing discussion amongst the membership; Keith Abbott ("Abbott"), the Employee Chair, stated: "I knew there had been some talk before about the legality of volunteering, getting a LOSAP [length of service award program] check from the state and getting a paycheck from the department. I wasn't surprised it was coming." (D.I. 62-5 (Abbott Dep.) at 34:19-21 & 35:1).  The amendment, at that time, applied to three individuals:  Plaintiff, Abbott himself, and Roland Morris, and it also "impacted all members of DFD, current and new." (D.I. 58 at 13; D.I. 58-2 at Exs. 15-16).  The parties dispute whether the House Committee notified Plaintiff of this change and her need to act.  (D.I. 58 ¶ 25; D.I. 25 ¶ 112).  Defendant provided Exhibit 15, a series of text messages, that appear to have informally notified Plaintiff.  (D.I. 58-2 at Ex. 15).  According to Defendant, Plaintiff did not choose one role or the other.  (D.I. 58 ¶ 25; D.I. 58-2 at Ex. 15).

On October 3, 2017, Molchan worked with counsel and the Delaware DOL to draft the first Charge of Discrimination.  (D.I. 25 ¶ 114).  October 10, 2017, the Delaware DOL sent Delmar FD notice of a Charge of Discrimination on behalf of Plaintiff.  (*Id.* ¶ 115).  Plaintiff received preliminary findings on or about December 21, 2017.  (*Id.* ¶ 116).  On December 27, 2017, Plaintiff was removed from the work schedule, her previously scheduled shifts were cancelled, and she was apparently removed from the payroll as well.  (*Id.* ¶ 108).  Plaintiff asserts that the bylaw amendment was therefore "simply a pretext to terminate [her] and which, on knowledge and belief, has not been applied to any other member." (*Id.* ¶ 111).  She further claims that one of the other individuals, whom she does not name, was permitted to keep both his membership and his employment.  (*Id.* ¶ 113).  An email from Abbott to another employee, dated January 17, 2018,

4

stated the following: "Remove Roland Morris from the payroll. Remove April Molchan from the payroll. Remove Keith Abbott from the payroll." (D.I. 58-2 at Ex. 16).

On or about January 19, 2018, Plaintiff submitted a second complaint to the Delaware DOL, alleging retaliation. (D.I. 25 ¶ 119). Delmar FD filed a response on February 12, 2018, which was deemed untimely. (*Id.* ¶ 120). In its response, Delmar FD admitted that Rementer touched Plaintiff's buttocks and that his actions were "inappropriate and warranted expulsion." (*Id.* ¶ 122). On May 12, 2018, the Delaware DOL sent Delmar FD a notice of the second Charge of Discrimination. (*Id.* ¶ 125). Delmar FD filed its response on June 1, 2018, denying that removing Plaintiff from the payroll was retaliatory. (*Id.* ¶ 126). Plaintiff received notices of her right to sue from the Delaware DOL on October 17, 2018 and from the U.S. Equal Employment Opportunity Commission on November 28, 2018. (*Id.* ¶¶ 127-28). Plaintiff alleges that she exhausted her administrative remedies. (*Id.* ¶ 11).

Plaintiff filed this action on January 15, 2019, claiming that Delmar FD, Rementer, and the town of Delmar wrongfully discriminated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Delaware Discrimination in Employment Act ("DDEA"), 19 Del. C. § 710 *et seq.* (*Id.* ¶¶ 130-31). Plaintiff also asserted claims for intentional infliction of emotional distress, negligent infliction of emotional distress, defamation and battery. (*Id.* ¶¶ 160-76). On February 19, 2019, Plaintiff filed a First Amended Complaint that removed the town of Delmar as a defendant but otherwise left the allegations and claims against Delmar FD and Rementer unchanged. (*See* D.I. 6). On March 4, 2019, Delmar FD and Rementer filed a motion to dismiss, arguing that the First Amended Complaint failed to plausibly allege discrimination in violation of Title VII or the DDEA based on either a hostile work environment claim or retaliation. (*See* D.I. 9). Delmar FD and Rementer also sought dismissal of the emotional

5

distress claims as insufficiently pleaded and barred by the Delaware Worker's Compensation Act, as well as dismissal of the battery claims as insufficiently pleaded. (*Id.*). On January 17, 2020, this Court granted the motion and gave Plaintiff leave to amend. (*See* D.I. 23).

On February 4, 2020, Plaintiff filed her Second Amended Complaint, removing Rementer as a defendant and expanding upon the preexisting allegations and claims made in the First Amended Complaint. (*See* D.I. 25). On February 18, 2020, Delmar FD moved to dismiss the Second Amended Complaint and to strike the new allegations. (*See* D.I. 27). On August 27, 2020, the Court conducted a telephonic hearing on the motions, granting the motion to dismiss as to the tort claims, but denying the motion as to the sexual harassment and retaliation claims under Title VII and the DDEA. (*See* Minute Entry for Telephonic Hearing held on 8/26/2020). The Court also granted-in-part and denied-in-part the motion to strike. (*Id.*).

The parties conducted and completed discovery. On June 24, 2021, Defendant filed its motion for summary judgment. (*See* D.I. 58). Plaintiff filed an Amended Answering Brief in Opposition to Defendant's Motion for Summary Judgment on July 28, 2021. (*See* D.I. 62). Along with her Answering Brief, Plaintiff submitted multiple declarations from individuals affiliated with Defendant who detailed their experiences with Rementer's behavior. (D.I. 62, Exs. H, I, J & K). Then, on August 9, 2021, Defendant filed its Reply Brief. (*See* D.I. 63).

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine issue of dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden "of demonstrating the absence of a genuine issue of material fact." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986). A party asserting that a fact cannot be – or, alternatively, is – genuinely

6

disputed must support its assertion either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials" or "by showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted) (emphasis in original). The Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (internal quotation marks omitted). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment. *Id.* at 252.

## III. DISCUSSION

In the Second Amended Complaint, Plaintiff alleges that Defendant unlawfully discriminated against her in violation of Title VII, as well as in violation of the DDEA, the Delaware counterpart to Title VII.[2] (D.I. 25 ¶ 130). Specifically, Plaintiff claims that she was subjected to sexual harassment from Rementer and discrimination by Defendant, which created a hostile work environment, and that her removal was retaliation for filing a complaint. (*Id.* ¶¶ 132-35). The Court will address the hostile work environment and retaliation claims in turn.

### A. Plaintiff's Hostile Work Environment Claim

"Title VII prohibits sexual harassment that is 'sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment.'" *Mandel v. M & Q Packing Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). A hostile work environment is one that "can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993). To prove that acts of sexual harassment created a hostile working environment, a plaintiff must establish the following:

    (1)    The employee suffered intentional discrimination because of his/her sex;

    (2)    The discrimination was severe or pervasive;

    (3)    The discrimination detrimentally affected the plaintiff;

---

[2] The DDEA largely resembles Title VII in its goals and protections; the Court will therefore address these federal and state claims together under the Title VII framework. *See, e.g.*, *Hyland v. Smyrna Sch. Dist.*, 608 F. App'x 79, 82 n.4 (3d Cir. 2015) ("[T]he evidence needed to prevail under the DDEA is generally the same as that needed to prevail under Title VII. Accordingly, because Hyland's Title VII claims fail, her DDEA claims fail, too.").

8

   (4)  The discrimination would detrimentally affect a reasonable person in like circumstances; and

   (5)  The existence of *respondeat superior* liability.

*Mandel*, 706 F.3d at 167. To determine whether a workplace is a hostile environment, a court must review all available evidence, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

  Here, Plaintiff alleges that the sexual harassment she experienced "was the result of a workplace that was permeated with 'discriminatory intimidation, ridicule, and insult,' which in this case proved to be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" (D.I. 25 ¶ 142). She supports her claims with the 2015 incident described in her Second Amended Complaint and "me too" evidence, in the form of declarations from other women having been harassed by Rementer or having witnessed him harassing others. (*See* D.I. 62 ¶¶ 3-4). In Defendant's view, Plaintiff's evidence fails to show "severe or pervasive" discrimination because such a showing cannot be supported by "isolated incidents" or the "me too" evidence submitted here.

  According to the Supreme Court, "me too" evidence is neither "*per se* admissible or *per se* inadmissible." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008). The determination of the relevance of this evidence "is fact based and depends on several factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Mandel*, 706 F.3d at 167. Here, the Court is persuaded that at least some of the offered "me too" evidence is relevant, at least because several declarants appear to have experienced or witnessed Rementer's harassment and suggest that Delmar FD was aware of repeated instances of it. Some of the evidence also suggests that Rementer's conduct was well-known within the fire

department and thus may bear on whether Plaintiff subjectively perceived the environment to be abusive. And finding that, the Court is persuaded that genuine issues of material fact exist that preclude summary judgment of Plaintiff's hostile work environment claim.

### B. Plaintiff's Retaliation Claim

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice" or "because he made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Title VII thus prohibits an employer from "retaliating against an employee for complaining about, or reporting, discrimination or retaliation." *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 256 (3d Cir. 2017).

A *prima facie* case of retaliation under Title VII requires a plaintiff to prove that (1) she engaged in protected activity; (2) the employer took a materially adverse action against her; and there was a causal connection between the protected activity and the employer's action." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 231 (3d Cir. 2007) (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 341-42 (3d Cir. 2006)).

Retaliation claims are subject to the *McDonnell-Douglas* burden-shifting framework. *Sullivan v. Hanover Foods Corp.*, No. CV 18-803 (MN), 2020 WL 211216, at *6 (D. Del. Jan. 14, 2020); *Rumanek v. Indep. Sch. Mgmt., Inc.*, 50 F. Supp. 3d 571, 578 n.4 (D. Del Jan. 10, 2014). Under that framework, Plaintiff must first make out a *prima facie* case of retaliatory discrimination. *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193-94 (3d Cir. 2015). If she is successful, the burden of production shifts to Defendant to articulate a "legitimate, non-retaliatory reason for having taken the adverse action." *Id.* If Defendant successfully completes

10

this second step, Plaintiff then has the opportunity to present evidence indicating that Defendant's reason(s) are mere pretext for a retaliatory motive. *Id.* Although the burden of production shifts back and forth, Plaintiff "has the ultimate burden of persuasion at all times." *Id.* (citing *Reeves*, 530 U.S. at 143).

Plaintiff argues that the bylaw amendment operated as a form of retaliation against her for filing a complaint against Rementer. (*See* D.I. 25 ¶ 111). Here, assuming that Plaintiff is able to make out a *prima facie* case of retaliation, there is no real dispute that Defendant has offered a legitimate, non-retaliatory reason to adopt the bylaw amendment. The bylaw amendment was one of thirteen introduced as a group four months after her complaint. The purpose of the bylaw amendment was to avoid wage and hour liability involved in having workers logging time as both volunteers and paid employees. And the bylaw amendment impacted all members of Delmar FD, current and new, and required at least two other members to elect between paid employment and volunteer work. Thus, the burden shifts back to Plaintiff to show that the offered reasons are a pretext. With respect to this, Plaintiff asserts numerous times in her answering brief that Defendant's actions were a pretext to terminate her. (*See* D.I. 62 at 1, 3, 15 & 16). The assertions, however, are conclusory at best – *e.g.*, the "amendment requiring member/employees to choose one or the other was a pretext to terminate her." There is no evidence cited and the Plaintiff has failed to carry her burden of production to go forward on her retaliation claim.

V. **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is DENIED-IN-PART and GRANTED-IN-PART. An appropriate order will follow.